Thank you, Your Honors. May it please the Court, my name is Javier Serrano and I represent Appellant Lamont Shepard. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. The District Court committed two errors that we ask this Court to reverse. First, with respect to the retaliation claim, in opposing summary judgment, Mr. Shepard presented evidence of retaliatory motive that created a genuine dispute of material fact. A straightforward application of this Court's decision in Bruce v. Ilst, along with a requirement to take the evidence in delight most favorable to Mr. Shepard as the nonmoving party, should have precluded summary judgment. Instead, the District Court got the rule exactly backward. And second, with respect to the excessive force claim, the magistrate judge presiding over trial failed to give Mr. Shepard, a pro se inmate, an opportunity to object to the state, and issued an incomplete and misleading jury instruction, requiring that Mr. Shepard prove that the officer that abused him did so sadistically. If I could start, if I could start. Let me ask you a question. Sure. What do we do with the Ninth Circuit case law that says with regard to a retaliation claim, if the alleged retaliator offers a explanation, and it can't be rebutted because the action would have been taken with or without the explanation that was offered, there can be no retaliation as a matter of law. And specifically, I'm referring to the CCR provision that says that if you file a complaint of abusive conduct by a staff member, the complainant gets moved into administrative segregation to protect the integrity of the investigation and to protect the complainant against any possible assault by the person he's complained against. And if I could just make two points in response, Your Honor. First, the regulation you're referring to, 3335, it's a crucial important point, does not mandate administrative segregation. Doesn't it say, doesn't it say, shall? No. What it says, Your Honor, it's in certain conditions. If certain conditions apply based on a threat or a, or jeopardizing the investigation. It says, or jeopardizes the integrity of investigation of an alleged serious misconduct, the inmate shall be immediately removed from the general population and be placed in administrative segregation. Where's the wiggle room in the regulation? The, the discretion in the regulation, Your Honor, is that what Mr. Shepard did here was file a complaint, was threaten to file a complaint about excessive, about the excessive force he received at the hands of Officer Quillen. So there's no evidence in the record that Mr. Shepard was a threat or even that Officer Quillen was a threat to Mr. Shepard. Well, but he was complaining about physical abuse by the correctional officer in the pod in which he was then housed. So why wasn't Lieutenant Weiss correct when he said, look, if you're going to file this complaint of excessive force against the officer, I have no choice under the regulation, but to move you to administrative segregation. He was not correct, Your Honor, for the first point, which is, as I mentioned, that certain conditions that we say are not met. And the second point. So you don't think that, that there's an argument here that in order to protect the integrity of the investigation, you need to separate the complainant from the object of the complaint? And, Your Honor, this is my second point, and this was under Bruce. There is an argument that Lieutenant Weiss had a general justification for what he did. But the point I wanted to make, Your Honor, is this is on summary judgment. Defendants for summary judgment. And the court's decision in Bruce, I think, speaks directly to this point. But doesn't that get back to my question? If the action would have been taken regardless of what Lieutenant Weiss said, then there cannot be retaliation as a matter of law. No, that's not correct, Your Honor. That under the regulation, so even if Lieutenant Weiss could have done this, even though he could have placed Mr. Shepard into administrative segregation, what Bruce says is that even if the inmate was placed where he arguably should have been and could have been for a legitimate reason, there's still a dispute, when there's still a dispute as to retaliatory motive, which there was here. But the lieutenant doesn't have, I guess the problem I'm having is I'm looking at that wording, and it looks to me to be mandatory. You're trying to argue that, no, no, there's discretion. They don't really have to follow a regulation that says, shall immediately be removed. And I'm having a difficult time understanding your argument in the face of what is, to me, very clear and compelling language. Maybe, Your Honor, it would help if we looked at some of the cases, you know, that even appellees rely upon. Do you have the regulation in front of you? I do, Your Honor. You've been asked a question about the regulation. It behooves you to look at the regulation and see if it's as mandatory as Judge Tolman suggests. No, Your Honor, I have — I'm trying to remember it by heart. It's not — just read the words. No, Your Honor, I'm not trying to remember the regulation by heart. I do understand that the regulation says shall, and shall — You're not reading the regulation. I'm trying to help you out here. If I could just turn to the regulation, then, Your Honor. There we go. That's always a good idea. You're being asked about some regulations. Sure. It says, when an inmate's presence in an institution's general inmate population presents an immediate threat — immediate threat to the safety of the inmate or others, endangers institutional security, or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be removed from the general population and placed in — So there's a — there is a — there is a shall. There's something mandatory about it. But there's a predicate. There are three predicates. One of three predicates, it has to be met. Right? That's correct, Your Honor. It doesn't mean every time that you — somebody makes a complaint. It means when somebody makes a complaint, there's one of three predicates. Read the language, right? Right. That's correct, Your Honor. The argument probably is, if you think about it, is that those predicates were not met, or at least were in dispute in this case. Isn't that right? That's right, Your Honor. And that's — There we go. That's what I was trying to express to — I knew — I knew that's what you had in mind. That's what I was trying to express when I said to my first point was that — But you did it badly. You should go back and see the tape and see how poorly you did it. Okay. Well, I — How you failed to zero in on what really the problem is. Of course it's mandatory. It's mandatory if certain things happen. It's not mandatory in every case, not every time a prisoner makes a complaint against an officer, does he get put in administrative segregation. That's correct, Your Honor. The point that I was trying to make was when there are certain conditions met, when there are three conditions in the statute met, none of which are present here. Well, they're at least in dispute, is your point, right? That's right. They're at least in dispute and therefore have to go to a jury. That's your point, isn't it? That is my point, Your Honor. And on summary of judgment — Let's move along then, now that we understand your position. Sure. And if I could just quickly point the Court to what I think the evidence — what the evidence of retaliation is. And this is three examples, Your Honor. First, in opposing summary judgment, in his papers, opposing summary judgment, Mr. Shepard, in his own account of the events, stated that in response to Mr. Shepard threatening to file a grievance against the officer that abused him, Lieutenant Weiss first tried to get Mr. Shepard to recant. And when he did not — when Mr. Shepard refused to recant, Lieutenant Weiss placed Mr. Shepard into administrative segregation as punishment. The Court can see this at — in the excerpts of record at ER 171. Second — Well, it's sort of ambiguous. I think what was going on there, the officer was saying, look, if you make a complaint, I understand the regulation to say I have to put you in administrative segregation. If you withdraw the complaint, then I probably won't have to do it. You could view it as a threat. You could also view it as a — you know, he's still stating him the facts. Why? That's right, Your Honor. And then this goes back to Your Honor's point that this is defendant's motion for summary judgment, where the inferences should be and were not, but should have been taken in the light most favorable to Mr. Shepard. This sort of raises an interesting question. We are instructed by the Supreme Court that generally questions of qualified immunity ought to be decided up front. Right. And the officer here says, look, I look at the regulation, and the way I read the regulation, it means that every time I read it as saying that whenever a prisoner makes a complaint, I need to put them in administrative segregation. Right? Right. And the question that becomes is, is that an unreasonable reading of the statute? Because if any reasonable officer would read the statute that way, then he's home free. And any disputes as to the facts on the ground in this case don't matter because he reads the regulation reasonably as saying whenever a prisoner files a grievance, he must be put in administrative segregation. And I think that's an unreasonable interpretation of the statute, Your Honor. And the reason is, in that event, every time an inmate made a First Amendment-protected grievance, they would be punished with administrative segregation. Let me ask you this. Sure. When properly applied, does Section 3335 serve a legitimate correctional interest? Yes, Your Honor, it does. And it does in the sense of preventing either threat to other inmates or to officers or to even Mr. Shepard or in terms of jeopardizing an ongoing investigation. But here it was not properly applied. Why not? It was not properly applied because Mr. Shepard's complaint against Officer Quillen, the officer that abused him, had already occurred. There was, you know, there's still and Lieutenant Weiss proffers a general justification by saying we're going to look into it. But in the meantime, we're going to put him and we're going to punish him in administrative segregation. And punishment for that meant being confined to a cell for all but two hours a week with less access to privileges that he would otherwise have had. Mr. Serrano, was there testimony, either deposition testimony or a declaration from Lieutenant Weiss indicating that he knew why Mr. Shepard had been removed from his cell initially by Officer Quillen? There was an interrogatory response saying that the reason Lieutenant Weiss removed him from his general cell and placed him in administrative segregation was based on deregulation 33335. No, I guess what I'm getting at is did Lieutenant Weiss know when he had this conversation with Mr. Shepard that Mr. Shepard had originally done what Officer Quillen said he had done, in other words, refuse to identify himself during the cell count and basically be uncooperative while they were down the hall to the program office? Well, I think there's a dispute in the record whether or not what Lieutenant Weiss knew. But what does he say? What does Mr. Shepard say? No, what does Lieutenant Weiss say? So in response to Mr. Shepard saying that the officer just abused me, I'm going to file a complaint against him. Mr. Shepard. You keep going to the complaint. I want to go back. I want to go before. I want to go to what, if anything, Lieutenant Weiss knew before the alleged force occurred during the, I'll call it, escort to the program office holding cell. Well, I think, Your Honor, from my recollection of the record that the first time Lieutenant Weiss was involved when he was called in that two officers walked Mr. Shepard along to a holding cell. He complained about the abuse. Lieutenant Weiss, as a commanding supervisory officer, then came in and spoke to Mr. Shepard. Right. He's the watch commander, right? Correct. Right. Okay. Essentially. So what, if anything, did the watch commander know about why Mr. Shepard had been escorted down the hall to the holding cell in the program office? That's unclear, Your Honor. There's nothing in the record to tell us? Nothing that I recall, right? And but what — Maybe the State Department. Maybe the government will. But the point I want to keep coming back to, Your Honor, just on summary judgment, according to Mr. Shepard's own account, that was before the district court got — But it goes back to Judge Kaczynski's question with regard to qualified immunity. If the lieutenant understood that this inmate had been disruptive and that the reason he'd been removed from his cell was to place him in a holding cell in the program office, and now he's faced with a complaint that excessive force occurred while they were escorting him to the holding cell, isn't that all part and parcel of whether or not a reasonable watch commander, under the circumstances, would have looked at this regulation and said, you know, if you're going to push this to the complaint stage, the reg says, I've got to put you in administrative segregation. Your Honor, I do not believe that there's any of that evidence in the record. All right. Well, I'll ask counsel for this. Sure. And, Your Honor, I know I'm short on time, but I — maybe I could turn just briefly to the point on excessive force in the jury instruction. Our — Your Honor, Mr. Shepard did not object. He's representing himself at trial. He didn't — he did not object to the jury instructions. But the magistrate judge presiding over trial did not give him an opportunity to do so. Well, he had overnight — I mean, he was given the proposed jury instructions at the start of the trial, and then the night before final instructions, the judge said, take a look at the jury instructions, and he didn't say anything the next morning, did he? He did not, Your Honor, but this is a pro se inmate. Yeah, but I mean, how much time do we have to give him? We're talking days and at least 12 hours. Rule 51 uses the words must, and it says the district court must give the parties an opportunity to object before — So is your position that the district court has an affirmative obligation to say on the record before the final instructions are settled, are there any objections to these instructions? Yes, Your Honor. That is the rule that we ask for. In the event of a pro se inmate, that the district court is required under Rule 51, and we cite the recent court's decision in United States v. Lew, that the district court has to specifically ask for objections, to say this is the time for objections. Okay. The case that we — But these three judges would be happy to hear such a rule. I'm sorry, Your Honor. I said these three judges across the circuit would be very happy to learn such a rule where they have to sort of invite objections. Well, Your Honor, I think that's what Rule 51 — that's based on Rule 51. In most cases, Your Honor, there's counsel on both sides, so objections are not going to be an issue. But here, in the specific circumstance of a prisoner pro se inmate, I think the rule does apply. And that's why — and what we're asking for, Your Honor — Did your client make any objections at trial? No, Your Honor. He was not familiar with the counsel's objections? Your Honor, I think — He didn't watch Perry Mason? Well, I'm not sure what he watched, Your Honor, but he did not make any objections. But what we're asking for, Your Honor, and then — So the magistrate judge gives him the instructions overnight and can't figure out that if he's got a problem with them, he's got to object. Well, Your Honor, the burden here I don't think is on Mr. Shepard. Rule 51 is an admonition to the district court to provide an opportunity to object at certain points, before the reading of preliminary instructions and before the reading of final instructions, out of the court — But the problem is he had opportunities throughout the trial and the next morning after the final set of instructions were provided to him. But the rule you're asking us to do is to engraft a new burden on the district courts that you have to specifically solicit objections because you're dealing with a pro se litigant who's representing himself at trial under a plain error standard of review. That's a tall order, counsel. And it is, Your Honor. And the standard of review, Your Honor, is important here in that it's because the district court violated Rule 51, we're asking this court for de novo review. How did the district court violate Rule 51? Because she did not give Mr. Shepard an opportunity to object to the instructions before — You'd have a great argument if she rolled right into final instructions to the jury five minutes after handing the instructions to the parties, but that's not what the record shows. Your Honor, I do not disagree that both parties had the instructions. Our position is that Rule 51 for a pro se inmate requires — Had the instruction changed in form from the set that she provided at the start of the trial to the final version that she provided? No, Your Honor. So he had the language of the proposed instruction for how many days? There's a two-day trial, Your Honor. For two days. And that's not sufficient time to make an objection? Your Honor, it's not because of my — I don't want to repeat, but just pointing out to what Rule 51 says is certain times providing the — providing the instructions. So assuming that he had been warned and he made an objection, what would have been that objection, and why would it have been meritorious? The objection, Your Honor, would have been that the instruction, which we understand is a model instruction from the Ninth Circuit, but that does not immunize the instruction. But the objection would have been and should have been that the Court cut off half of the standard from the Supreme Court's opinions in Whitley and Hudson, which requires context for use of the word sadistically. Sadistically, this is a constitutional civil rights claim. He had — this is — and the Court is talking about mental state. So what we asked for is that in order for the instruction to not be misleading, to not be incomplete, to include the words good faith at the beginning as a part of the united whole of that instruction. And that's based, Your Honor, on the language from the Supreme Court opinion itself of Whitley. So that's what we — that's what we believe, Your Honor, in this Court's de novo review, because we're making a de novo argument, that it was a misleading and incomplete jury instruction and that appellees have the burden to show that it was more — that it was more probably than not the lack of prejudice. Thank you. Thank you. Good morning. May it please the Court. I am Misha Igra. I'm a California supervising deputy attorney general, and I represent the defendants. I'd like to address a couple of misstatements made during Mr. Shepard's argument. First, the time with the jury instructions. The pretrial order directed that the party shall exchange proposed jury instructions not later than March 1st, nearly three weeks before trial. Defendants served proposed jury instructions on Mr. Shepard. Mr. Shepard didn't proffer any jury instructions. So he got a copy three weeks before trial of the same language that the jury ultimately heard? That's correct, Your Honor. On this challenge instruction? That's right. All right. Also, there was a statement regarding the escort and then Lieutenant Wise coming into the holding cell area. There was an intervening event, and that was that the plaintiff reported the alleged misconduct by Officer Quillen to Sergeant Molina. Sergeant Molina then left and got the officer on duty, his commanding officer, Lieutenant Wise. Lieutenant Wise came in at that point, and that's when he had an interaction with Mr. Shepard. Your Honor, I had asked— Yeah, what did Lieutenant Wise know at that point in time as to why Mr. Shepard was now standing in the holding cage in the program office? Well, plaintiff's own testimony is probably the best source for that. And plaintiff has had not fewer than five different stories about that. The first two are in his original complaint and his amended complaint. And then his deposition. He took different positions in both his own MSJ and his opposition to defendant's MSJ. But the sworn testimony was in his amended complaint, which is the operative complaint that Lieutenant Wise came in and said, you are making allegations against my staff. I'm going to place you in ADSEG because that is all I can do. But before that, I want to get it all on camera. In the amended complaint— So he's saying that he has no choice but to put him in ADSEG, right? He says that is all I can do. And in his deposition, he's consistent with that one of his three times. First, he says that Lieutenant Wise responded, the only thing I can do is place you in ADSEG. Mr. Shepard alleges, he said, well, the rules don't state that. I have a right to allege staff misconduct. And, quote, he liked, no, you don't, not here, not at Corcoran. And he said something similar later in his deposition at page 54. But at page 64 of his deposition, Mr. Shepard testified that he and Lieutenant should be read broadly. And so according to his deposition testimony— Sounds like law school. That's right. So according to his own deposition testimony, Mr. Shepard said that they talked about why he was being emplaced in administrative segregation and that Lieutenant Wise responded, this is the way the regulation reads and this is why I'm doing it. Can't he now claim pretext? Say, look, that's what he said. You look at the regulation, it doesn't say anything like that. Certainly does not say that all people who file, all prisoners who file misconduct complaints have to be put in ADSEG. And what he was really doing is threatening and trying to get Mr. Shepard to by holding up this regulation and pretending to think that it required him to put him at ADSEG. It's all a big ruse. And if put before a jury, a jury would say, ha, ha, ha, not true. No reasonable officer would read that to be mandatory. Well, there's an interplay of regulations. First, if an inmate alleges staff misconduct, an investigation must occur. And 3335 says that to ensure the integrity of an investigation, an inmate shall be placed in administrative segregation. It says when. It says when. It does not say always. It says when. It has three predicates that have, one of which has to be met. And it certainly does not say that all prisoners who make complaints have to be put in ADSEG. No, Your Honor. It says that when an inmate's presence in the general population threatens either the safety of the inmate or others, or when it jeopardizes the integrity of an investigation, the inmate shall be placed in administrative segregation. So which, which of those, which of those are applicable here? Well, there's more than one. And as reflected in the 114D lockup order, there was more than one check. Well, I'm sort of, I'm, I'm, I'm not sure I understand it. Is it Officer Wise's position that there was one of these things, predicates applied here, or that the predicate doesn't matter, that all complainants get put in ADSEG? Well, plaintiff reports that Lieutenant Wise's response. I'm not asking what plaintiffs. I'm asking you, your client's position. My client's position is that any time he receives a report of serious staff misconduct, he believes an investigation must be performed, and an inmate is placed in administrative segregation. That is his pattern and practice. So, so whether or not, in the terms of regulation, leaving the prisoner in his unit, housing unit, would endanger the investigation, your client's view is he gets put in ADSEG as soon as there's a complaint. Because it would jeopardize the ensuing investigation. Yes. Because it would always jeopardize the ensuing investigation? Yes. His testimony was. But that's, that's not what the regulation says. The regulation does not say always. The regulation says when it does. Yes. Which seems to suggest that there are times when it might not, in which case that doesn't happen. But qualified immunity applies even if he has a mistaken belief that what he's doing is proper. And in this case, actually, it was proper, as is reflected. You're jumping ahead. I'm trying to figure out your client's position. And then we'll see whether or not it's reasonable. Is your client's position that all this regulation authorizes placing prisoners in ADSEG every time they make a complaint, regardless of a specific finding, whether there is a it endangers the investigation? No, Your Honor. But it's close. My client believes that every time an inmate makes an allegation that they have been physically harmed by an officer, that that requires an investigation. And that in order to properly investigate that, the inmate must be moved to administrative segregation to preserve the integrity of the investigation. Ms. Ingra, you were referring us, I think, to the Form 114-D. Yes, Your Honor. Which is what? The form, the contemporaneous form that is prepared at the time of the incident, presented to the inmate, and then he signs it to acknowledge why he's being moved to ADSEG. Yes. And that 114-D has two dates on it, the date of the incident and then two days later when it was reviewed by Captain Diaz. Captain Diaz, who is not a defendant here, there has been no allegation of any axe to grind by Captain Diaz, he also said that there was a security threat raised by his, by the plaintiff's allegations. He needs to be retained in administrative segregation pending the investigation. So an unrelated person has now said that two days later that, yes, this is the appropriate procedure. And within a week, six days later, the Institutional Classification Committee meets. They also determine that there needs to be an investigation and that Mr. Shepard needs to remain in administrative segregation until it's concluded. And am I reading the form correctly that when Lieutenant Weiss filled out this form on July 15 of 2008, he checked as the reason for placing the inmate in administrative segregation, both that he presents an immediate threat to the safety of himself or others and his placement is necessary because it jeopardizes the integrity of an investigation based on the allegation of misconduct? Yes. And if you look slightly lower, it's not directly in the box. There are two Xs in the third box for endangerous institution security. So he cited all three? He did. How do we know that's not a subterfuge? Well, Your Honor, there are no facts on the ground that suggest a threat. There's nothing. There's no incident. There's no punching. There's no kicking, running, anything like that. This is a plain vanilla complaint. And the officer checks, checks, checks. Why isn't this a clear case of subterfuge which has to go to the jury to determine whether or not the officer was merely retaliating? Well, as this Court has found, it's not an adverse action to put someone in administrative segregation. If there is a legitimate penological reason. But if you do it, if you claim there is a legitimate penological reason, it's not supported by the facts and you do it as a way of retaliating or you do it as a way of forcing the prisoner to withdraw the complaint, then it isn't protected, right? There's no doubt about that. You're not going to disagree with that, are you? I do disagree, Your Honor. This Court in Grayson. I'm sorry. You think prison guards are entitled to threaten to put people at SAG for no legitimate reason, even if none of these things are met, just to force them to withdraw the complaint or to punish them for filing the complaint? Your Honor, this. Is that your point? Where there is a legitimate penological reason for placement in administrative segregation. If there is, but again, my question presupposes that this is. The motive is, the motive, this Court has said, if you have a legitimate administrative authority, such as the discretion to move inmates from cell to cell, the Constitution imposes few restrictions on the use of the authority regardless of any additional motives which are claimed to exist. Yeah, I don't think you're listening to me. I am saying there is no other reason. The only reason is retaliation. And the form is checked as a lie, as a subterfuge, to cover up what is retaliation. Perfectly clear that that would not be covered by qualified immunity. Do you disagree with that? Where an inmate has alleged staff misconduct and an investigation must ensue, then regardless of what the form states, by plaintiff's own testimony. Why don't you answer my question, and then you can give me an explanation. If you're asking, Your Honor, may officers. I'm asking what I asked. Why don't you answer the question that I asked, and then we can go on and you can explain to me anything else you want to explain. Officers may not. I said there's no basis for concluding that there is a, there's no factual basis for or impairment of the investigation or anything else. The officer, nevertheless, checks the three boxes for the sole purpose of concealing the fact that he's doing it to retaliate or to threaten the inmate with something unpleasant to get him to withdraw the complaint. But you do not disagree that that was the conduct unprotected by qualified immunity. That hypothetical, I do not disagree with, Your Honor. But that is not the evidence here. Well, of course. That's why it's a hypothetical. You think you're telling me something new? I've been doing this for longer than you've been a lawyer. So I do understand the difference. But you tell me, why isn't that at least a jury issue here? Why isn't it, you know, this is a, you know, your client says there was a reason. I don't see anything in the record, anything at all, other than the fact that he checked these things off. There's no shoving. There's no pushing. There's no threatening by the prisoner. There's no prison revolt in the making. There's absolutely zero facts on the ground that suggest any reason to suggest impairment of the investigation or threatening of the officers or any of those three things. Why isn't this at least a jury issue? Why isn't this the kind of thing that 12, what is it, eight members of the community will get to listen to it? And doubtless rule in favor of the officer. But because on summary judgment, when defendant met their burden of showing the legitimate penological reasons for placement and administrative segregation, what are the penological reasons? What are the facts of support? The idea that there is a threat, I mean, to the investigation. What are the facts? So the evidence in the record includes the declaration of defendant Quillen, the declaration of Lieutenant Wise and the declaration of officer. What do they say? What are the facts? And so those declarations say that the plaintiff alleged after he had been placed in the cell to officer Molina, that he had been roughed up by the officers. Sergeant Molina goes to get Lieutenant Wise, relays this information and then comes to see plaintiff. Plaintiff reiterates that an officer has roughed him up, which means that there must be an investigation. And Lieutenant Wise testified that under such circumstances in his discretion, he is permitted to put the inmate in administrative segregation. And those actions were ratified two days later by a captain and by an independent committee. You haven't said any facts that suggest that any of the three predicates are met. Endangerment of investigation, threats to the officer. So he just does his belief that he thinks that if somebody makes a complaint, the prisoner makes a complaint, he has to put in that seg. That's all he said. And this was ratified by somebody higher up in the hierarchy. Yes. And so why isn't that a jury issue? Why must an investigation be undertaken? No, no. You can do an investigation. You can do an investigation with the prisoner in place. You can do an investigation and remove Officer Quillen to another unit. You could do various other possibilities you could do. What supports the idea of this punitive action? What facts on the ground? What facts in the record? So the testimony in the motion for summary judgment is that the regulation is designed to protect the inmate from exposure to the employee against whom he made the allegations. To help eliminate any witness tampering. Is there evidence that Officer Quillen threatened to retaliate against Mr. Shepard? So he had to be protected? Shepard had to be protected? The regulation protects against that. And that's why he's placed on punitive segregation. So your position is that the regulation requires lifting the prisoner out every time there is a complaint. Whenever there's a complaint, you've got to put the prisoner in ADSEG. That sounds to me like what you're saying. I've asked you that earlier. You said very close. And then you gave me a version of it that sounds very much like that's what you're saying. So is that what you're saying? So when the lieutenant believes... No, let's talk generically. If a prisoner files a complaint against an officer, are there any circumstances where the prisoner will be left and not put in ADSEG under your interpretation of the regulation? No. Any complaint against an officer? No. Okay. So that's it. You're reading of the regulation, the regulation authorizes and that indeed requires putting any prisoner who complains in ADSEG. Any complaint? Okay. You know, that's your interpretation and you're sticking to it, right? Counsel, maybe I'm missing something here, but isn't the legitimate peniological purpose that Lieutenant, or excuse me, Officer Quillen is the officer who's assigned to regular duty in the pod? Shepard has now made a complaint of abuse of force against Quillen. If the inmate is left in the same pod where he's going to continue to have multiple contacts daily with the correctional officer against whom he's complaining, that's a bad situation. That's just asking for more trouble between the complainant and the officer. So you've got two choices. You either move the inmate out of the pod or you reassign Quillen to another job in a different part of the prison where they're not going to have any contact with one another. Isn't that the, it seems to me just a common sense reason to do it. Otherwise, every time an inmate made a complaint, you'd have to move the officer out of his duty post. Yes, it is to protect the inmate from exposure to the employee and vice versa. Whether the complaint is meritorious or not, it really doesn't matter, does it? Well, that's why an investigation needs to be conducted while they're separated. Because the officer knows that once a complaint is made, an investigation will surely follow whether it is sustained, exonerated, or unfounded. And it preserves the integrity of that investigation to have them separated. Yes, Your Honor. I'm sorry. And if it's found to be unfounded, then the prisoner gets put back in the pod with the same officer against whom he's made the complaints, which is found to be unfounded, and that's safe? Well, this inmate was on orientation status, Your Honor. So by the time he got out of administrative segregation, he cleared that. No, but the consequence of your position is we take him out every time because it's a bad situation. And, you know, we put him back in after the prisoner has been found to have been lying, and we put him back in with the same officer. Does that make sense? Well, no. His housing placement would be determined by a committee. And if the committee felt that it was inappropriate for this inmate to be rehoused on the same yard, but that's not something that either of the defendants would have it in control over. So was this like a, I don't know what you'd call it, a new inmate unit?  Anybody in that particular pod was recently arrived at the facility? Yes. That's the testimony, that he was on orientation status. He was new to the unit, which is why Quillen didn't know him, why it was necessary for him to produce his. Any reason he couldn't have been put in a different pod rather than air tag? I mean, it's very different being put in air tag. I mean, that's very serious. Well, he was still on orientation status, so he would have been in the orientation pod. Let me just ask one last final question, so I understand what your responses were earlier. Are you saying that Lieutenant Wise correctly read and understood Section 3335 when he said he understood it to mean that anytime there's a complaint, he has to put the person into segregation? Are you asking, did Lieutenant Wise believe that? No, I'm asking you, did he correctly interpret Section 3335? I think he reasonably interpreted that, which is all that's required for qualified immunity. I understand that, but did he correctly interpret? Not any complaint, but any complaint of serious misconduct by staff assaulting an inmate. Necessarily, there must be an investigation, and that's why you need to protect the integrity of that investigation. Make sure that you come to the right conclusion. But in that case, if there is a serious complaint of physical misconduct? Yes. Your interpretation is that this always requires moving the prisoner to ANSAG? Well, it's a combination of two. First, every time there's an allegation of serious misconduct, there must be an investigation. And then, with 3335, the inmate must be moved to protect the integrity of that investigation. So I've skipped the middle step, because you say the middle step always applies. So just to simplify, your answer is, if there is a complaint of serious physical misconduct, the prisoner has to be moved to ANSAG. That's the correct interpretation of the regulation? Yes, Your Honor. Okay, clear enough. Thank you. I think you are out of time. We'll give you a minute for rebuttal, if you wish. Thank you, Your Honor. I just wanted to make three quick points. The first is that when there's a dispute as to retaliatory motive, even if there is a legitimate penological interest, summary judgment is still inappropriate. That's what this Court has said in Bruce, in other cases like Austin v. Terhune and Brodheim v. Crye. The dispute about retaliatory motive makes this a jury question. We're coming back to the question I opened with, and that is, if we take opposing counsel's statement to be a correct interpretation of the application of this regulation, then it doesn't matter what Lieutenant Weiss said to Mr. Shepard. He was going to ANSAG because of the fact that he'd made a complaint of serious misconduct against Officer Glowen. Well, Your Honor, I think the counsel's position here today, I think it is an unreasonable interpretation of the statute. Well, assume for the sake of my question that I think she's right. And if that's the case, he would have gone to ANSAG no matter what Lieutenant Weiss said to him. Why would it be impermissible for the District Court to grant summary judgment at that point? Because as a matter of law, this cannot be actionable retaliation. Well, in the hypothetical, I just want to distinguish the hypothetical from what's in the record. What's in the record is not that there was no discretion. What's in the record is that there's a regulation which requires predicates, as Your Honor's mentioned. But in that hypothetical, I think there would be a serious facial problem with the regulation if — a First Amendment problem with the regulation if prisoner, pro se inmates who have a First Amendment-protected right to file a grievance are every time punished with ADSEC. Well, but if there's a legitimate peniological purpose for moving him, which is to protect him from having further contact with the person that he's complained against so that there aren't any further problems, I don't understand how his First Amendment rights are being chilled. He could still make his complaint, an investigation will follow, and it'll either be upheld or it won't. His First Amendment rights are being chilled, Your Honor, because he's being punished for bringing this claim. He's being moved from a general cell where he's confined in ADSEC to his cell for all but two hours a week. That is chilling of a First Amendment right because if an inmate knows that they're going to be put into ADSEC, it's less likely that they're going to bring a First Amendment claim in the first place. If we write an opinion the way you're suggesting, we write it, how do we give deference to the warden and the other people within the institution in deciding which inmates get placed where within the institution? I mean, the problem we have with Mr. Shepard is he's a new arrival. He hasn't even been classified yet. We don't know if he has gang ties. We don't know whether or not he's going to have to go to a higher area of security within the prison. That's why he's in the receiving unit. I think you write the opinion by applying the standard that's in Bruce. You say when on summary judgment, there's a dispute as to retaliatory motive, and when there's a dispute, even in the face of an asserted justification, which we're not disputing is not potentially valid, but on summary judgment, we're saying retaliatory motive precludes summary judgment. That's how Bruce is written, and that's how other decisions have been written as well, that here where there's retaliatory motive, and that's a disputed question, that's a jury question. And I know I'm far over my time, Your Honor, so I just want to thank you for the opportunity. I once asked a question like that many years ago, and the lawyer said, well, I have an opinion drafted right here. Would you like to see it? Well, Bruce. I've safely asked that question for 15 years, and nobody's answered it. Well, this was further back than 15 years, but he actually had an opinion written out. He said, would you like to see it? No, actually, no, it's okay. Thank you, Your Honor. Thank you. Oh, thank you, by the way, for taking the case pro bono. Much appreciated. Case cases argued will be submitted.
judges: Rayes, Kozinski, Tallman